1  Michael McShane (CA State Bar #127944)
2  mmcshane@audetlaw.com
   Jonas P. Mann (CA State Bar #263314)
3  jmann@audetlaw.com
4  AUDET & PARTNERS, LLP
   221 Main Street, Suite 1460
5  San Francisco CA 94105
6  Telephone: 415.568.2555
   Facsimile: 415.568.2556
7

8

9          IN THE UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11
    RUSS McCULLOUGH, A/K/A "Big
12  Russ McCullough," RYAN SAKODA,     **Case No.** 2:15-cv-02662-AB-JEM
    and MATTHEW R. WIESE, A/K/A
13  "Luther Reigns," individually and on
14  behalf of all others similarly situated,
                                          **OPPOSITION TO DEFENDANT'S**
15                                        **MOTION TO TRANSFER**
            Plaintiffs,                   **VENUE PURSUANT TO 28 U.S.C.**
16                                        **§ 1404(a)**
17       v.
18                                        **Hearing Information:**
    WORLD WRESTLING
19  ENTERTAINMENT, INC.,                  Date:        July 13, 2015
20                                        Time:        10:00 a.m.
            Defendant.                    Courtroom:   4
21
22                                        Hon. André Birotte, Jr.

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   PROCEDURAL AND FACTUAL HISTORY ............................................. 2

III.  ARGUMENT.................................................................................... 5

    A.   Motions to Transfer Under 28 U.S.C. § 1404(a) .............................. 5

        1.   *Atlantic Marine* Is Not Dispositive of the Question of Transfer in This Case ................................................................. 5

        2.   *Atlantic Marine* is Distinguishable From the Instant Case...... 6

    B.   The Forum-Selection Clause is Invalid............................................ 8

        1.   The Forum-Selection Clause is Unconscionable Under California Law. ................................................................... 8

        2.   The Forum-Selection Clause is Similarly Unconscionable Under Connecticut Law Where Defendant Seeks to Have This Case Transferred. .......................................................... 16

    C.   The Forum-Selection Clause Should Otherwise Not Be Enforced ................................................................................. 19

    D.   The Instant Case Is Distinguishable From The Cases Cited By Defendant Where Forum-Selection Clauses Were Enforced Second Heading................................................................... 20

IV.   CONCLUSION.............................................................................. 21

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF AUTHORITIES

**Cases:**

*24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199 (1998)............ 8, 11

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982)......................... 9

*Am. Software v. Ali*, 46 Cal. App. 4th 1386 (1996) ................................ 11

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
  24 Cal. 4th 83 (2000) ..................................................................... 10

*Atlantic Marine, Inc. v. U.S.D.C for the Western District of Texas*,
  134 S. Ct. 568 , 187 L. Ed. 2d 487 (2013)................................................. passim

*Boyd v. Grand Trunk W. R. Co.*, 338 U.S. 263 (1949) ......................................... 19

*Brown v. Soh*, 280 Conn. 494 (2006)..................................................................... 16

*Carboni v. Arrospide*, 2 Cal. App. 4th 76 (1991) .................................................... 8

*Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80 (1992) .......... 16, 17, 18

*D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d. 308; (D. Conn. 2011)................... 18

*Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc.*,
  31 Conn.App. 455 (1993) ........................................................................ 16, 17

*Fairfield Lease Corporation v. Romano's Auto Service*,
  4 Conn. App. 495 (1985) .......................................................................... 16

*FCT Electronics, LP v. Bank of America, N.A.*,
  (Super. Ct. Conn. Sept. 22, 2011).............................................................. 18

*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846 (2001)........... 9, 10

*Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (1981)............................................. 10

*Griffin v. Nationwide Moving & Storage Co.*,
  446 A.2d 799 (Conn. 1982) ....................................................................... 17

*Hottle v. BDO Seidman LLP*, 268 Conn. 694, 846 A.2d 862 (2004)..................... 18

*Iamartino v. Avallone*, 2 Conn. App. 119 (1984) ................................................... 16

*Kinney v. United Healthcare Servs.*, 70 Cal. App. 4th 1322 (1999) .......... 9, 10, 11

*Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699 (1976) ......................... 11

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

*Murphy v. Schneider National, Inc.,*
    362 F.3d 1133 (9th Cir. 2003) ........................................................ 20, 21

*Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690 (1961) ................................ 10

*Pardee Construction Co. v. Superior Cour*t,
    100 Cal. App. 4th 1081 (2002) ...................................................... 8, 11

*R.F. Daddario & Sons, Inc. v. Shelansky et al.*,
    123 Conn. App. 725 (2010) ............................................................ 17

*Reizfield v. Reizfield*, 125 Conn. App. 782 (2011) ........................................ 17

*Smith v. Mitsubishi Motors Credit of America, Inc.*,
    247 Conn. 342 (1998) ........................................................ 16, 17, 18

*Spradlin v. Lear Siegler Management Servs. Co.*,
    926 F.2d 865 (9th Cir. 1990) ......................................................... 20

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ............................... 5

*Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997) ................................. 10

*The Bremen, et al. v. Zapata Off-Shore Co.*,
    407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)..................... 19, 20, 21

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ........................................... 5

**Statutes**

28 U.S.C. § 1404(a) ....................................................................... 5

Cal. Civ. Code § 1670.5 .................................................................. 8

**Other Authorities**

J. Calamari & J. Perillo, *Contracts* § 9-37 (3d ed.) ..................................... 18

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Plaintiffs Russ McCullough, Ryan Sakoda, and Matthew R. Wiese (collectively "Plaintiffs"), submit this memorandum of points and authorities in opposition to Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Connecticut.

## I.   INTRODUCTION

Plaintiffs, all residents of California, are three former professional wrestlers who performed for Defendant World Wrestling Entertainment, Inc. ("Defendant" or "WWE"). As alleged in extensive detail in the Complaint, Plaintiffs suffered great and permanent physical and neurological injuries as a result of Defendant's intentional conduct and negligence. Plaintiffs were repeatedly subjected to dangerous situations as part of their performances, forced to perform while injured, and provided substandard or even no medical attention when they complained of their treatment or it was obvious they were injured.

Plaintiffs performed for Defendant under adhesive, take-them-or-leave-them contracts. As stated in the Complaint, each Plaintiff was told to either sign the contract or he could not perform. There was no opportunity to review or negotiate the contracts. Defendants held all the power in this extremely unequal situation. In addition to the parties' wildly uneven power in the formation of the contracts, substantively the contracts are imbalanced as well. Plaintiffs were essentially required to give up all their rights in exchange for the WWE "endeavoring" to book them performances. The contracts are unconscionable and their choice of law and forum selection clauses draconian.

Now, Defendant, hoping to deny Plaintiffs their chosen forum and force their seriously injured former wrestlers to litigate their case on, quite literally, the other side of the country, invokes those adhesive choice of law and forum selection provisions. These contracts do not relate to Plaintiffs' claims as they concern tortious conduct outside the scope of a performer's contract. Even if these claims fell within the contract, the forum-selection clauses are invalid and should not be enforced.

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

1  Finally, even if the clauses were valid, transfer should be denied as it would be unjust
2  and against public policy to force Plaintiffs to litigate these claims outside their home
3  state and chosen forum.

4        In arguing that Plaintiffs should be banished to the District of Connecticut,
5  where Defendant is headquartered, Defendant principally relies on the United States
6  Supreme Court's recent decision in *Atlantic Marine, Inc. v. United States District*
7  *Court for the Western District of Texas*, 134 S. Ct. 568 , 187 L. Ed. 2d 487 (2013).
8  Unfortunately for Defendant, Defendant's argument misinterprets *Atlantic Marine*
9  and seeks to distort the Court's analysis of 28 U.S.C. §1404(a). Contrary to
10  Defendant's wishes, *Atlantic Marine* did not substantively alter the law in California
11  or elsewhere regarding the enforceability of forum-selection clauses. Rather, *Atlantic*
12  *Marine* merely clarified the appropriate procedural method by which a defendant
13  should seek to enforce a **valid** forum selection clause.

14        For the reasons stated below, the forum selection clause in Plaintiffs'
15  performance contracts is invalid and unenforceable. Even if the forum selection
16  clauses were valid, transfer would be denied as sending Plaintiffs to litigate their
17  claims in a distant court is unreasonable and unjust and contravenes public policy.

18  **II.    PROCEDURAL AND FACTUAL HISTORY**

19        This case originated as a diversity jurisdiction filing pursuant to the Class
20  Action Fairness Act ("CAFA"). Plaintiffs and putative class representatives are three
21  California residents who performed for the WWE on various dates in the past.
22  Plaintiffs filed a class action complaint on April 9, 2015, concerning the egregious
23  mistreatment of wrestlers, including Plaintiffs, by Defendant World Wrestling
24  Entertainment, Inc. ("Defendant" or "WWE"). Following a Local Rule 7-3
25  conference regarding this motion to transfer and Defendant's eventual plan to file a
26  motion to dismiss, Defendant filed the instant motion.

27        As alleged in the complaint, WWE concealed and denied the existence of
28  evidence concerning the long-term health impacts of repeated head trauma suffered

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

by WWE wrestlers. Plaintiffs and putative class members all suffer from greatly increased risk of permanent degenerative brain diseases, including but not limited to chronic traumatic encephalopathy ("CTE"), dementia, Alzheimer's disease, and other cognitive impairing conditions. Compl. ¶1.

After voluntarily assuming a duty to monitor and maintain the health of its wrestlers, the WWE chose to actively deceive its wrestlers and encouraged them to continue to perform dangerous stunts with minimal safeguards, despite knowing the long term health risks. The WWE directly profits from the spectacle of violence it encourages and therefore works to keep wrestlers coming back for more trauma again and again. ¶¶2-17.

The Complaint filed by Plaintiffs contains detailed allegations regarding the history of WWE and how it its profits derive from the violence it encourages. ¶¶25-30; 45-73. The Complaint details the known science of head injuries that can stem from the activities WWE subjects its wrestlers, including Plaintiffs and putative class members, to. ¶¶31-44. The Complaint details how WWE wrestlers commonly suffer from head injuries and the WWE ignores and conceals those injuries and their long-term effects. ¶¶74-97; 108-129.

Plaintiff Russ McCullough, a resident of Corona, California, wrestled for WWE under the name "Big Russ" from 1999 to 2001. ¶20. Mr. McCullough often wrestled several time per week for WWE, often did not have adequate time to rest between matches, and was encouraged to wrestle while injured. ¶131. In one instance, the WWE forced Mr. McCullough to wrestle despite his torn knee ligament and use of crutches. *Id.* During his time with the WWE, Mr. McCullough suffered numerous injuries to his upper body, neck, and head – in one instance while performing he was knocked completely unconscious after being struck with a metal chair. ¶132. During this instance, the WWE did nothing to intervene and Mr. McCullough was beaten further with the chair – fifteen times more – while unconscious. *Id.* Afterward, Mr. McCullough sought medical attention on his own

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

and was diagnosed with a severe concussion. *Id.* When he reported the even to WWE who responded "Not our problem." *Id.* Since leaving the WWE "family" Mr. McCullough has suffered numerous physical and neurological symptoms including migraines, memory loss, depression, and panic attacks; these lasting injuries have required more than forty visits to the emergency room. ¶135.

Plaintiff Matthew Wiese, a resident of Los Angeles, California, wrestled for the WWE from 2004 to 2005 under the name Luther Reigns. ¶21. During his time with the WWE, Mr. Wiese sustain numerous untreated head injuries. ¶142. During one particularly brutal match, Mr. Wiese was punched so hard in the head that he vomited following the match. *Id.* WWE did nothing to intervene and medical staff did nothing to treat him. *Id.* As a result of his time with the WWE, Mr. Wiese suffers from headaches and suffered a stroke, he continues to have post-concussion symptoms including fatigue, dizziness, and memory loss. ¶144.

Plaintiff Ryan Sakoda, a resident of West Hollywood, California, wrestled for the WWE from 2003 to 2004. ¶22. Mr. Sakoda suffered injuries while performing for the WWE and was forced to continue wrestling while injured or face losing his job. ¶137. During one match in 2003, Mr. Sakoda was knocked unconscious by his opponent. ¶138. The course of treatment recommended by WWE medical staff was limited to a warning "not to go to sleep" and that if he did so, he may bleed to death. *Id.* As a result of the injuries suffered with WWE, Mr. Sakoda suffers from severe migraines, memory loss, and depression. ¶140.

The contracts between WWE and Plaintiffs, which WWE now attempts to rely on to drag Plaintiffs out of their chosen forum, across the country are adhesive, unconscionable, and unenforceable. Plaintiffs have no opportunity to negotiate or modify them. ¶159-161. Mr. Sakoda was specifically told his contract was "take it or leave it" and it was presented to him after he had already started performing for WWE. ¶160. Mr. Wiese and Mr. McCullough were similarly afforded no opportunity to negotiate the contracts. ¶161. They were told to sign if they wanted to wrestle. *Id.*

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

III.   **ARGUMENT**

   A.   **Motions to Transfer Under 28 U.S.C. § 1404(a)**

   A motion to transfer a rightfully filed action out of a plaintiff's chosen forum is governed by 28 U.S.C. § 1404(a), which provides that a district court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting 28 U.S.C. § 1404(a)). As the Supreme Court has held, "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors" *Stewart Org., Inc.*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)) (internal citations omitted). And while the presence of a forum-selection clause is a "significant factor," the Court must still consider "the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Stewart Org., Inc.*, 487 U.S. at 29.

   1.   ***Atlantic Marine* Is Not Dispositive of the Question of Transfer in This Case**

   Contrary to Defendant's assertions, *Atlantic Marine* did not substantively alter the question of whether a forum selection clause is enforceable or create any new rights for Defendant. While Plaintiffs admit that it is the most recent Supreme Court case interpreting the requirements of § 1404(a), it did not overrule prior cases interpreting § 1404(a) and it does not, as Defendant would hope, stand for the proposition that Defendant is entitled to an automatic transfer based on its request. Rather, *Atlantic Marine* merely clarified the proper procedure for requesting a transfer based on a forum selection clause when there is a **valid** forum selection clause. Indeed, the Supreme Court specifically stated that its entire "analysis presupposes a contractually valid forum-selection clause." *Id.* at 581 n.5.

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

In *Atlantic Marine*, the Supreme Court held that "[w]hen the parties have agreed to a **valid** forum-selection clause, a district court should ordinarily transfer the case to the forum specified. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." 134 S. Ct. at 581. Thus there remain two reasons this Court can (and should) deny Defendant's motion to transfer: (1) the forum-selection clause is invalid and (2) extraordinary circumstances unrelated to the convenience of the parties require denial. Both apply here.

###    2.    *Atlantic Marine* is Distinguishable From the Instant Case.

*Atlantic Marine* concerned two commercially sophisticated parties in a negotiated contract. Atlantic Marine contracted with the Army Corps of Engineers for a construction project at a military base in Texas, Atlantic Marine then subcontracted with another company, J-Crew Management to provide certain support. *Atlantic Marine*, 134 S.Ct. at 575. The negotiated contract included a clause stating that any dispute arising from the contract "shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia." *Id.* at 576. A dispute arose regarding payment and J-Crew filed suit, Atlantic Marine filed both a motion to dismiss under § 1406 and a motion to transfer under § 1404(a). *Id.* The district court denied both motions and Atlantic Marine petitioned the Fifth Circuit for a writ of mandamus, which was also denied. *Id.*

Atlantic Marine appealed to the Supreme Court and in its ruling, the Supreme Court clarified and confirmed that the proper approach to seek to enforce a forum-selection clause is a motion to transfer under 28 U.S.C. § 1404(a). The Court did not grant parties seeking to enforce a forum-selection clause any new rights or overrule any of its prior transfer jurisprudence.

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

The crucial factor which distinguishes this case from *Atlantic Marine* – and the majority of cases granting transfer under a forum-selection clause – is that the latter involved commercial disputes within the terms of contracts at issue, contracts that were negotiated by commercially sophisticated parties with an opportunity to bargain. In the instant case, as detailed in the Complaint, the causes of action arise from actions taken by WWE to assume a duty of care to named Plaintiffs (and its other wrestlers) and its complete and utter failure to meet that duty of care. The claims are well outside the scope of a booking contract as they concern tortious conduct, both intentional and negligent, and thus do not relate to the booking contracts.

The Complaint alleges that WWE repeatedly and affirmatively subjected Plaintiffs and members of the putative class to seriously injurious, traumatic episodes, which were intentionally and directly controlled by the WWE. After suffering physical and neurological traumas, Plaintiffs were pressured to ignore symptoms and continue to wrestle. All the while, WWE hid information it knew concerning the effect of repetitive head trauma. Nothing in the performance contracts cited by Defendants deals with these matters at all.

Indeed, in *Atlantic Marine* the Court specifically addressed how a forum selection clause in a commercial contract could be considered part of the bargain between the parties. The Court considered that "[a] forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." *Atlantic Marine*, 134 S. Ct. at 583.

Here, that is simply not the case. Plaintiffs' claims do not concern the commercial relationship between the parties, they address Defendant's tortious conduct. Further, Plaintiffs and Defendant never engaged in any contractual negotiations at all and Plaintiffs never had any opportunity to consider how the forum

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

selection clause would affect them. Indeed, they were told they had no choice but to sign the contract as is if they wanted to perform.

**B.     The Forum-Selection Clause is Invalid.**

**1.     The Forum-Selection Clause is Unconscionable Under California Law.**

California law has long recognized that a court need not enforce a contract that is so offensive to public policy as to be unconscionable:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5.[1] "In making [a] determination [of unconscionability], the court should consider the commercial setting, purpose, and effect of the contract." *Carboni v. Arrospide*, 2 Cal. App. 4th 76, 81 (1991).

"[U]nconscionability has both a procedural and a substantive element, both of which must be present to render a contract unenforceable." *Pardee Construction Co. v. Superior Court*, 100 Cal. App. 4th 1081, 1088 (2002) (quoting *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1212-1213 (1998)). "However, [a]lthough both elements must be present before a contract or contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed in tandem such that the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause." *Pardee Construction Co.*, 100 Cal. App. 4th at 1088 (quoting *Kinney v.*

---

[1] "Section 1670.5 was enacted in 1979. (Stats. 1979, ch. 819, § 3, p. 2827.) Before that time, however, California courts long recognized 'unconscionability' as a viable common law doctrine even in the absence of specific statutory authority." *Carboni*, 2 Cal. App. 4th at 81 (1991) (citing cases).

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

*United Healthcare Servs.*, 70 Cal. App. 4th 1322, 1329 (1999)) (internal quotations omitted).

The contracts at issue here are both procedurally and substantively unconscionable as a result of the vastly disparate bargaining power between the WWE and Plaintiffs, the grossly oppressive and one-sided terms favoring the WWE, the obscure placement of the choice of law and forum selection clauses, and the reckless conduct engaged in by the WWE from formation of the contract and throughout the entirety of Plaintiffs' relationship with the WWE. Accordingly, the forum-selection clause contained therein is unenforceable against Plaintiffs.

### a)   The Forum Selection Clause is Procedurally Unconscionable.

The contracts at issue here are procedurally unconscionable due to their adhesive nature, the disparate bargaining power between the parties, and the many one-sided clauses contained therein. At the formation of the contract, there was no negotiation; WWE held vastly superior bargaining power, sophistication, and knowledge as to the contents of the clauses, and Plaintiffs, not represented by counsel, signed the contract with no knowledge or understanding of the rights they were giving up. Indeed, Plaintiffs were given no meaningful opportunity to review, much less negotiate the contracts before signing them.

"The procedural element [of unconscionability] focuses on 'oppression' or 'surprise.'" Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982)).

The formation of the contracts between WWE and Plaintiffs was replete with such improprieties. WWE failed to direct Plaintiffs to the forum selection clause and

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

choice of law provisions, which were hidden deep in the document in a "Miscellaneous" section. WWE offered the contract solely on a "take it or leave it" basis, and did not allow Plaintiffs an opportunity to negotiate any terms of the agreement. Further, Plaintiffs, having limited education and no legal representation, lacked the business sophistication needed to protect their interests. Plaintiffs did not and could not have understood the terms within their contracts and could not have understood the rights they were giving up.

WWE is an international corporation, its total domination of the wrestling market combined with access to top legal representation, had complete control over the formation of the contracts with Plaintiffs. As the only major player in the wrestling industry, there were no other options for a wrestlers like Plaintiffs and the WWE recognized their monopoly and took advantage of their superior position by insisting on unfair and unreasonable terms and not providing Plaintiffs with the opportunity to obtain counsel and understand the terms presented.

"Analysis of unconscionability begins with an inquiry into whether the contract was a contract of adhesion--i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores*, 93 Cal. App. 4th at 853 (*citing Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113-114 (2000); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981); *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 694 (1961)). "A finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores*, 93 Cal. App. 4th at 853 (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533-1534 (1997); *Kinney,* 70 Cal. App. 4th at 1329).

Here, Defendant offered the contracts on a take it or leave it basis and they were standardized among all Plaintiffs and putative class members. Indeed, as Defendant's moving papers make clear – all contracts during a given time period were identical. (*See* Def's Mtn. at pp. 7-8.) These documents are the definition of procedurally unconscionable contracts.

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

### b)   The Forum Selection Clause is Substantively Unconscionable.

Plaintiffs' contracts with the WWE are substantively unconscionable; the contracts are unfairly one-sided, with virtually all benefits accruing to the WWE, and WWE exculpated from any responsibility or liability. The terms of the contract shock the conscience and are not justified by the circumstances under which they were made.

"Substantive unconscionability focuses on the actual terms of the agreement …." *Pardee Construction Co.*, 100 Cal. App. 4th at 1090 (quoting *Am. Software v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996)). "While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Pardee Construction Co.*, 100 Cal. 4th at 1090 (quoting *24 Hour Fitness, Inc.*, 66 Cal.App.4th at 1213). "Oppression is present when an agreement includes terms serving to limit the obligations or liability of the stronger party." *Pardee Construction Co.*, 100 Cal. App. 4th at 1090 (citing *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 713 (1976) "Thus, in essence, '[s]ubstantive unconscionability' focuses on the terms of the agreement and whether those terms are so one-sided as to 'shock the conscience.'" *Pardee Construction Co.*, 100 Cal. App. 4th at 1090 (quoting *Kinney*, 70 Cal.App.4th at 1330; *Am. Software, Inc.*, 46 Cal.App.4th at 1391).

The contracts at issue are unfairly one-sided to the point of shocking the conscience. They contain profoundly unfair terms of ownership of intellectual property rights, wholly one-sided termination provisions, and the forum selection and choice of law provisions at issue here that serve to only benefit WWE. Had Plaintiffs understood the provisions and the rights they were giving up – indeed, had they any meaningful opportunity to review or modify the contracts – Plaintiffs would not have agreed to the forum selection clause.

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

The contracts as a whole are substantively unconscionable due to the outrageously one sided provisions from the outset in 1.2 where, for giving up all rights to names, images, likenesses, licenses, and services, later enumerated for a length of time in perpetuity, WWE will "endeavor" to book the Plaintiffs in WWE's sole discretion at various matches.

> 1.2    In consideration of WRESTLER's granting of rights, license and other services, as set forth herein, and provided WRESTLER shall faithfully and fully perform all obligations hereunder, PROMOTER shall endeavor to book WRESTLER as an individual or as a member of a group, which determination shall be made in PROMOTER's sole discretion, in wrestling matches at various Events.

This shockingly one-sided language is rampant throughout the contract. Section 2 provides WWE with the ownership rights, in perpetuity, of all of the Plaintiffs' work, services, and rights.

> 2.5    All Works and WRESTLER's contributions thereto shall belong solely and exclusively to PROMOTER in perpetuity notwithstanding any termination of this Agreement. To the extent that such Works are considered: (i) contributions to collective works, (ii) a compilation, (iii) a supplementary work and/or (iv) as part or component of a motion picture or other audio-visual work, the parties hereby expressly agree that the Works shall be considered "works made for hire" under the United States Copyright Act of 1976, as amended (17 U.S.C. § 101 et seq.). In accordance therewith, all rights in and to the Works shall belong exclusively to PROMOTER in perpetuity, notwithstanding any termination of this Agreement. To the extent that such Works are deemed works other than "works made for hire", WRESTLER hereby irrevocably assigns in perpetuity to PROMOTER all right, title and interest in and to all such rights in such Works and all renewals and extensions of the copyrights or other rights that may be secured under the laws now or hereafter in force and effect in the United States of America or any other country or countries.

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

WWE even takes complete ownership of all *previously held* service marks, trademarks, and licenses which are attributable to the wrestler and leave themselves with the option to keep this intellectual property in perpetuity.

> 3.1    The parties agree that as of the date of this Agreement, all service marks, trademarks and any and all other distinctive and identifying indicia under which WRESTLER claims any rights, including but not limited to WRESTLER'S legal name, nickname, ring name, likeness, personality, character, caricatures, voice, signature, costumes, props, gimmicks, gestures, routines, and themes, which are owned by WRESTLER or in which WRESTLER has any rights anywhere in the world (collectively, the "Original Intellectual Property") are described and identified on Schedule A attached hereto and incorporated herein by reference. WRESTLER hereby assigns in good faith to PROMOTER and PROMOTER hereby accepts all worldwide right, title and interest in and to WRESTLER's Original Intellectual Property, including but not limited to, the rights to license, reproduce, manipulate, promote, expose, exploit and otherwise use the Original Intellectual Property anywhere in the world in any commercial manner, media, art form, method or device now known or hereinafter discovered.

The contracts continue to strip all rights away from the Plaintiffs, including all merchandising rights in Section 4. In Section 5, Plaintiffs were required to provide exclusive ownership and use by the WWE, "even to the exclusion of WRESTLER" but also requires the wrestler to provide a sublicense if they participate in any form of media or similar activity, whether related to WWE or not.

> 5.2    In the event WRESTLER desires upon reasonable notice to PROMOTER during the Term of this Agreement either individually or through his authorized representative(s) to participate in movies, films, commercials, product endorsements, videos, television programs or similar activities (collectively "Permitted Activities") and promotional events for the Permitted Activities, WRESTLER may do so subject to PROMOTER's approval, which shall not be unreasonably withheld provided a written sublicense is executed between PROMOTER, WRESTLER and any relevant third parties and further provided WRESTLER shall not utilize the New Intellectual Property in any manner in connection with such Permitted Activities without

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

PROMOTER's written consent, and that PROMOTER retains first priority, to the exclusion of any such Permitted Activities, with respect to the use and scheduling of WRESTLER's services at all times during the Term, as defined herein.

The contracts continue in similar fashion, to remove rights from Plaintiffs and provide complete ownership to WWE. By the time Section 13.7 and 13.8 are read, Plaintiffs have given up almost all of his rights to WWE to the point where WWE even owned their signatures. Buried amidst this legalese, the choice of law provision and forum selection clause, not distinguished on their own and not specifically identified in any way, limits Plaintiffs to the United States District Court of Connecticut and applies only Connecticut law.

13.7   This Agreement is made in Connecticut and shall be governed by and interpreted in accordance with the laws of the State of Connecticut, exclusive of its provisions relating to conflicts of law.

13.8   The parties agree to submit any and all disputes arising out of or relating in any way to this Agreement exclusively to the jurisdiction of the United States District Court of Connecticut. The provision to submit all claims, disputes or matter in question to the Federal court in the State of Connecticut shall be specifically enforceable; and each party, hereby waiving personal service of process and venue, consents to jurisdiction in Connecticut for purposes of any other party seeking or securing any legal and/or equitable relief.

Requiring Plaintiffs, all residents of California, to only submit disputes in Connecticut is unreasonable, inequitable, and unconscionable. The costs of litigating in Connecticut, a jurisdiction that is among the farthest possible in the United States from California, is unduly burdensome. Had Plaintiffs been made aware of these provisions and had he understood them, they would not have accepted them.

Further, the contracts were entered into under false pretenses and fraudulent behavior by WWE. The WWE was aware of the severe and deadly results of concussions and sub-concussions, yet specifically avoided any acknowledgement of such risks to Plaintiffs during formation of the contract and employment. In fact,

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

WWE continued to come up with new and creative methods of causing concussions, including hitting wrestlers in the head with metal chairs and dropping them six feet on their heads. *See generally*, Plaintiff's Complaint (recounting WWE's fraudulent and negligent behavior).

The contracts are just one part of WWE's fraudulent scheme to unconscionably profit from Plaintiffs' injuries. The Plaintiff's Complaint sets forth specific examples of fraud and negligence wherein WWE routinely and consistently ignored Plaintiffs' injuries, ignored the scientific facts about concussions and sub-concussions, failed to properly disclose the nature and dangers of concussions and sub-concussions resulting from Plaintiffs' injuries in the ring, and failed to adequately treat Plaintiffs' injuries which resulted from their employment with WWE and were directly related to the terms of the contract, including Sec. 9.5 and 10.2, wherein WWE takes up the duty to monitor and maintain healthy wrestlers, and insure the wrestler's continued sound mental and physical condition.

WWE's failure to provide necessary medical treatment to Plaintiffs when they were the only ones with knowledge of the dangers of concussions and sub-concussions, and yet still insisted on Plaintiffs' continued fighting after having suffered from concussions and sub-concussions showed reckless misconduct because they knew the serious danger posed to Plaintiffs and failed to disclose the dangers to them during formation of the employment contract, during employment and continuous injury in the ring, and after retirement where they continued to suffer injury as a result of the ongoing damages from the concussions and sub-concussions. WWE is a sophisticated international business which maintains numerous trained physicians and other medical personnel to monitor, recognize, and treat wrestlers' injuries. WWE is aware of the medical literature on concussions and sub-concussions, and was aware of the dangers resulting from failure to properly treat concussions and sub-concussions at the time the contracts were entered into between

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Plaintiffs and WWE. Yet, WWE failed to disclose the facts and the dangers to Plaintiffs and caused them irreparable harm and ultimately an untimely death.

The contracts at issue are substantively unconscionable and the forum selection clause should be stricken. The contract was entered into between parties with disparate bargaining power and the oppressive clauses entered into express the one-sided nature of the deal.

> ### 2. The Forum-Selection Clause is Similarly Unconscionable Under Connecticut Law Where Defendant Seeks to Have This Case Transferred.

In addition to being unenforceable under California law, the booking contract relied on by Defendant for its motion to transfer is also unenforceable under Connecticut law – the venue and law Defendant seeks to apply in this matter. Connecticut law holds that contracts which violate public policy are unenforceable. *Brown v. Soh*, 280 Conn. 494, 501 (2006). Unconscionability is a matter of law to be decided based upon the facts and circumstances of the case. *Fairfield Lease Corporation v. Romano's Auto Service*, 4 Conn. App. 495, 498 (1985); *Iamartino v. Avallone*, 2 Conn. App. 119, 125 (1984). "The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on one hand, and which no fair and honest man would accept, on the other." *Smith v. Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, 349 (1998).

"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 88 ("Cheshire Mortgage"). The Court should look to whether, "in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract". *Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc.*, 31 Conn.App. 455, 464 (1993). The

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

party claiming unconscionability has the burden of demonstrating "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party". *Id.* at 464.

There are two forms of unconscionability, procedural and substantive, which recognize both the oppressive obligations on the contracting party and the coercive and unfair formation of the contract itself. *See Smith v. Mitsubishi Motors*, 247 Conn. at 349 (1998); *Cheshire Mortgage*, 223 Conn. at 91-92 (1992) . Whereas procedural unconscionability is "intended to prevent unfair surprise and…concern unequal bargaining power" substantive unconscionability "focuses on the content of the contract." *Cheshire* Mortgage, 223 Conn. at 87, fn.14 (1992); *R.F. Daddario & Sons, Inc. v. Shelansky et al.*, 123 Conn. App. 725, 741 (2010); *Reizfield v. Reizfield*, 125 Conn. App. 782, 799 (2011).

The Booking Contract referenced in this case is procedurally unconscionable due not only to the disparate bargaining power between the parties, but also many one-sided clauses themselves. Connecticut law "does not favor contract provisions which relieve a person from his own negligence." *See Griffin v. Nationwide Moving & Storage Co.*, 446 A.2d 799 (Conn. 1982). At the formation of the contract, there was no negotiation; WWE held vastly superior bargaining power, sophistication, and knowledge as to the contents of the clauses, and Plaintiffs, not represented by counsel, signed the contract with no knowledge or understanding of the rights they were giving up.

Procedural unconscionability "focuses on the process by which the allegedly offensive terms found their way into the agreement." *Cheshire Mortgage*, 223 Conn. at 87, n.14 (1992); *R.F. Daddario & Sons, Inc.*, 123 Conn. App. at 741 (2010); *Reizfield*, 125 Conn. App. at 799 (2011). Procedural unconscionability is intended to prevent unfair surprise and is based upon factors concerning the circumstances of the making of the transaction revolving around unequal bargaining power. *Smith*, 247 Conn. at 352; *Cheshire Mortgage*, 223 Conn. at 90; *Emlee Equip. and Leasing Corp.*,

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

31 Conn. App. at 563 n.12, 626 A.2d 307 (1993) ("The element of unfair surprise has frequently been termed by commentators and courts as 'procedural unconscionability' and is implicated by bargaining improprieties in the contract formation process.").

   The contracts are substantively unconscionable due to the unfairly one-sided terms which shock the conscience and are not justified by the circumstances in which the contract was made. *See FCT Electronics, LP v. Bank of America, N.A.*, CV106002699 (Super. Ct. Conn. Sept. 22, 2011) ("Substantively unconscionable terms may take various forms, but may generally be described as [so] unfairly one-sided….as to 'shock the conscience[.]'"). The Contract is unfairly one-sided to the point of shocking the conscience resulting from the unfair ownership rights provisions, the termination provisions, and the forum selection clause provision. The "allocation of risks or costs…is overly harsh or one-sided and is not justified by the circumstances in which the contract [was] made." *Id.* The forum selection clause only benefits WWE. Had Plaintiffs understood the provisions and the rights they were giving up and had WWE not fraudulently coerced them to sign the agreement, Plaintiffs would not have agreed to the forum selection clause.

   A contract is substantively unconscionable if the terms of the contract are unreasonably favorable to the other party. *See Smith*, 247 Conn. at 342 (1998) (defining substantive unconscionability "as whether the terms of the contract impose oppressive obligations on the contracting party"); *See also Cheshire Mortgage*, 223 Conn. at 91-92. "Substantive unconscionability focuses on the 'content of the contract.' " *Cheshire Mortgage*, 223 Conn. at 80 n.14 (*quoting* J. Calamari & J. Perillo, *Contracts* § 9-37 (3d ed.)). "[A] contractual provision may be so outrageous as to warrant a court's refusal to enforce it based on substantive unconscionability alone." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d. 308; (D. Conn. 2011); *Hottle v. BDO Seidman LLP*, 268 Conn. 694, 720-21, 846 A.2d 862 (2004).

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**C.    The Forum-Selection Clause Should Otherwise Not Be Enforced**

The Supreme Court has long recognized that there are some instances where a forum selection clause should not be enforced. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *The Bremen, et al. v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916, 32 L. Ed. 2d 513, 523 (1972) (citing *Boyd v. Grand Trunk W. R. Co.*, 338 U.S. 263 (1949)). The Court should also not enforce a forum-selection clause if "enforcement would be unreasonable and unjust, or [if] the clause was invalid for such reasons as fraud or overreaching." *Id*

The Supreme Court did not overrule any of its earlier jurisprudence on forum-selection clause in ruling in *Atlantic Marine*. As the Court reaffirmed in *Atlantic Marine*, "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion…must evaluate both the convenience of the parties and various public-interest consideration." *Atlantic Marine*, 134 S. Ct. at 581. Here, if the Court finds the forum-selection clause to be valid, it "may consider arguments about public interest factors only." *Id.* at 582. And while Defendant has assumed this transfer to be automatic, the Supreme Court recognized that "it is conceivable in a particular case that the district court would refused to transfer a case notwithstanding the counterweight of a forum-selection clause." *Id.* Given the egregiousness of Defendant's conduct and the severe injuries of the Plaintiffs, this is such a case where transfer is inappropriate.

The Ninth Circuit identified four factors that should be considered when determining the enforceability of a forum selection clause in the context of an employment agreement: (1) any power differentials which may exist between the two parties to the contract; (2) the educational background of the party challenging the clause; (3) the business expertise of the party challenging the clause, and (4) the

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

AUDET & PARTNERS
LLP
A&P

1   financial ability to bear the costs and inconvenience of litigating in the forum selected

2   by the contract. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1141 (9th Cir.

3   2003) (quoting *Spradlin v. Lear Siegler Management Servs. Co.*, 926 F.2d 865, 868-

4   69 (9th Cir. 1990)).

5        All of these factors weigh in favor of disregarding the forum selection clause.

6   As discussed above, the power differential between WWE and Plaintiffs is about as

7   staggering as one could imagine. WWE is an international entertainment organization

8   whose dominance in its field is unrivaled. Plaintiffs, on the other hand, were three

9   hopeful performers who were afforded no opportunity to truly review, let alone

10  negotiate the contracts at issue. WWE had skilled counsel. Plaintiffs had no one to

11  review the agreements and no legal or business training. Finally, WWE does business

12  across the country, including in California, and is thus fully capable of litigating these

13  claims in the Central District. Plaintiffs on the other hand are injured and forcing

14  them to litigate their claims in Connecticut would be at great cost and disadvantage to

15  them.

16      **D.    The Instant Case Is Distinguishable From The Cases Cited**
17      **By Defendant Where Forum-Selection Clauses Were**
        **Enforced Second Heading**
18

19      In *Bremen*, which recognized, a district Court's discretion to refuse to enforce

20  a forum-selection clause if "enforcement would be unreasonable and unjust, or [if]

21  the clause was invalid for such reasons as fraud or overreaching[,]" the Court

22  ultimately held that the forum-selection clause at issue was enforceable. *Bremen*, 407

23  U.S. at 15. However, in doing so, the Court recognized that the parties were two

24  commercially sophisticated entities who negotiated the contract at issue. The opinion

25  is replete with references to the extensive negotiations conducted by the parties:

26  "Zapata made numerous changes in the contract without altering the forum clause,

27  which could hardly have escaped its attention. Zapata is clearly not unsophisticated in

28  such matters." *Id.* at 14 n.16. The Court recognized the distinction between such an

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

extensively negotiated contract and a contract of adhesion, such as the one at issue in this case: "this was not simply a form contract with boilerplate language that Zapata had no power to alter" *Id.* at 14 n.14. The Court even recognized the role that fostering international trade played in its decision: "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside."

In *Murphy*, 362 F.3d 1133 (9th Cir. 2003), the Ninth Circuit reaffirmed that forum selection clauses are presumptively valid and after examining the *Spradlin* factors, the Court upheld a forum selection clause in an employment contract. Plaintiff in *Murphy* was a commercial long haul trucker working for defendant Schneider National and was injured on premises owned by defendant Trane while performing his job duties. *Id.* at 1136. In rejecting the plaintiff's argument that the "non-negotiability and power difference" precluded enforcement, the Ninth Circuit made an important distinction that is not present in this case. The Court stated that "[i]f as [plaintiff] asserts, [defendant] told him that the contract was not negotiable, [plaintiff] had the opportunity to seek work with other employers if he opposed the forum selection clause." *Murphy*, 362 F.3d at 1141.

Here, that is quite simply not the case. There was no opportunity for Plaintiffs to find another employer because in terms of professional wrestling, Defendant is essentially the only game in town; indeed, the WWE is, on information and belief, the only professional wrestling company in the country. Plaintiffs had no opportunity to review or negotiate their contracts and they had nowhere else to look for a professional wrestling job.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' contracts with the WWE are unconscionable and unenforceable. Accordingly, Defendant's motion to transfer this action to the District of Connecticut should be denied.

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

Dated this June 22, 2015                    AUDET & PARTNERS, LLP


                                               /s/ Jonas P. Mann
                                            Jonas P. Mann
                                            jmann@audetlaw.com
                                            221 Main Street, Suite 1460
                                            San Francisco, CA  94105
                                            Telephone: 415.568.2555
                                            Facsimile: 415.568.2556
                                            *Attorneys for Plaintiffs*

**OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**